KANSAS CITY & MEMPHIS RAILWAY COMPANY *v.* SMITHSON.

Opinion delivered June 8, 1914.

1. EVIDENCE—CONTRACT—PAROL EVIDENCE.—Parol evidence is admissible to explain the subject-matter of a written contract, when the same does not vary or contradict the terms thereof. (Page 310.)

2. CONTRACTS—MUTUAL MISTAKE—RESCISSION.—A written contract will be rescinded where the evidence clearly establishes a mutual mis-

take on the part of both participants in the negotiations as to what they were really contracting about. (Page 310.)

3.    Contracts — Mutual Mistake — Rescission — Damages. — Appellee agreed for a certain consideration to give a portion of his land for a public road next a railway right-of-way, which the railway was to construct. Under a mutual mistake, appellant, a railroad, took the said land and used it for its right-of-way. *Held*, a rescission of the agreement being impossible, the appellant will be required to respond in damages for altering the purpose of the contract. (Page 310.)

4.    Actions—Contracts—Mutual Mistake—Remedy.—Equity is the proper court in which to bring an action for rescission of a contract on the ground of mutual mistake, and it is error to transfer the action to law, even though defendant has so acted that a rescission is impossible, and damages only can be awarded. (Page 210.)

5.    Appeal and Error—Transfer from Equity to Law—Error—Affirmance.—Although an action is improperly transferred from equity to law, when the judgment of the court upon the evidence is one which would be affirmed, had the appeal come from the chancery court, the judgment of the law court will be affirmed. (Page 310.)

Appeal from Washington Circuit Court; *J. S. Maples,* Judge; affirmed.

*Dick Rice* and *J. V. Walker,* for appellant.

1.    It is presumed that the law is well known and equally within the knowledge of all persons, and assertions of law, though false, are regarded as mere expressions of opinion and can not be made the basis of an action. 20 Cyc. 19; 44 L. Ed. U. S. 1095; 66 N. Y. 483; 13 N. W. 242; 5 Hill (N. Y.) 303; 39 Am. Dec. 436; 68 *Id.* 653. Everybody is expected to know the law and the legal effect of a written instrument. 46 Am. Rep. 357; 44 Pac. 944; 69 Ind. 1.

2.    Fraud must be of existing facts, or facts previously existing, and can not consist of mere promises as to future action. Cases *supra.*

3.    Where a contract contains the agreement of parties, evidence can not be introduced to vary or contradict its terms. Kirby's Dig., § 6569.

4. It was error to overrule the motion to strike. Kirby's Digest, § 6145.

*John W. Grabiel,* for appellee.

1. The demurrer was properly overruled. 99 Ark. 438; 138 S. W. 1003; 96 Ark. 163.

2. Evidence that the representations were false and impossible of fulfilment, and that appellant knew them to be false, and appellee thereby deceived was competent. 55 Ark. 112; 75 *Id.* 89; 100 *Id.* 28; 19 *Id.* 111.

3. Parol testimony was admissible to show the contract was obtained by fraud. 94 Ark. 575; 82 *Id.* 569; 101 *Id.* 135; 87 *Id.* 614; 95 *Id.* 150; *Ib.* 95; 101 *Id.* 95; 81 *Id.* 373; 86 *Id.* 169; 94 *Id.*; 101 *Id.* 95.

4. It is competent always to show the real consideration. 55 Ark. 112; 101 *Id.* 603; 102 *Id.* 669; 105 *Id.* 281.

5. A refusal or neglect to perform his part of a contract will justify a rescission. 38 Ark. 174; Benjamin on Contracts, 361; 191 Ill. 319.

McCULLOCH, C. J. Appellant is a railway company, duly incorporated under the laws of the State of Arkansas, and is engaged in building a railroad from Tontitown to Fayetteville, and in doing so constructed its road across a small tract or lot of land owned by appellee near Fayetteville, in Washington County.

The case was tried in the circuit court as an action for damages for taking the right-of-way without compensation therefor, but it originated in the chancery court, whence it was transferred to the circuit court.

The lot in controversy owned by appellee was situated in the outskirts of the city of Fayetteville and fronted on a public road. It was 100 feet in depth by fifty-five feet in width, and there was situated thereon a small frame building in which appellee was conducting a mercantile business, finding a line of customers among the employees of a near-by manufacturing plant. Fifty feet of the front end of the lot was taken by appellant company and its road constructed across it, and the company moved the storehouse back upon the remaining fifty feet. That detached the property from the public road

and made the storehouse front upon the railroad track without any outlet to the public road or street.

Appellee proved damages to his property sufficient to warrant the jury in awarding him the sum of $350 as compensation for the loss sustained.

The citizens of Fayetteville were interested in inducing appellant to build its line of railroad to that city, and, in order to do so, proposed to make a donation to the company, and also to obtain the right-of-way from Tonti-town to Fayetteville. Mr. J. H. McIlroy, a member of a business institution of the city known as the Commercial League, was appointed as chairman of a committee to acquire the right-of-way for the railway company. He approached appellee for the acquisition of the front half of his property, and, after some negotiations, he entered into a written agreement as follows:

"June 26, 1912.

"J. H. McIlroy, Chairman of R. of Way Com., Kansas City & Me. Ry. Co.

"Dear Sir: I propose the following settlement in consideration of the payment to me of $100 in cash, or you acquire me a strip of land on the north end of my lot fifty feet from north to south and of equal with my lot, and the moving of my store building back north about sixty feet from present location, I agree and bind myself to convey to said railway company by good and sufficient warranty deed free from any incumbrance a strip of ground fifty feet in width off of the south end of my lot which is fifty-five feet in width, and the above settlement shall cover any and (all) damage to which I may be entitled by reason of the building of said railroad.

"C. B. Smithson."

This contract was entered into between Mr. McIllroy and appellee at the latter's store, and at that time the railway company was constructing its line and was then engaged in work near appellee's property. Appellee asserts and attempts to prove, that at the time he entered into this contract Mr. McIllroy represented to him that the railroad would be constructed along the line of the

public road, and that by an agreement with the county court, the public road would be moved farther north and run through the front end of appellee's property. This arrangement would have given appellee a frontage on the public road, the same as before the construction of the railroad. Appellee introduced other witnesses whose testimony tended to corroborate his assertion, and there is also proof to the effect that Mr. McIllroy verbally made an arrangement with the county judge whereby the line of the railroad could be constructed along the public road; but the company, in constructing its road, failed to grade off and prepare the public road and its use of the old road was stopped by an injunction.

Appellee commenced this suit in the chancery court, as before stated, and, after setting up the foregoing facts, asked that the written contract be rescinded, and that he be awarded compensation for the damage to his property.

Appellant demurred to the complaint, and the court overruled the demurrer, but, treating it as a motion to transfer, ordered the cause transferred to the circuit court, where, as before stated, it was tried, and the trial resulted in a verdict in favor of appellee.

The evidence establishes very clearly, we think, the fact that when appellee and Mr. McIllroy entered into the written contract, they both thought that the public road was to be run through appellee's lot so that his storehouse, when removed to the back end of the lot, would be built along the line of the old road. In other words, the parties were contracting for the use of a part of appellee's lot for the purpose of establishing a public road on it, and not for the purpose of running a line of railroad through and over it. Now, instead of using the part of the lot taken for that purpose, the railway company has seen fit to depart from that intention, and, leaving the public road where it is now, to construct its railroad over appellee's lot between the storehouse as at present located and the old road, thus rendering the remainder of his property of very little value.

No rule of evidence was violated in permitting appellee to prove this state of facts, for it did not vary or contradict the terms of the contract, but only explained the subject-matter thereof. It clearly establishes a mutual mistake on the part of both participants in the negotiation as to what they were really contracting about, that is to say, the purpose for which the acquired right-of-way was to be used.

The plainest principles of equity applied to those circumstances demand that appellee be given the right of rescission, for it appears that, without his consent and without fault on his part, the right-of-way for the construction of a new public road was made use of for the purpose of constructing a railroad. *Fleischer* v. *McGehee,* 111 Ark. 626.

But inasmuch as appellant, by its own act in disregarding the original purpose and taking the property for use in constructing the road, has made a rescission of the contract impossible, it should be required to respond in damages for thus altering the purpose of the contract. The jury has awarded damages in a sum which we think the evidence clearly sustains.

Appellee sought the appropriate remedy by going into a court of equity, and the case should not have been transferred to law; but inasmuch as the correct result was reached, there was no prejudice from transferring the cause.

The judgment of the court being correct upon the evidence, and one which we would affirm if it came to us on appeal from the chancery court, it follows that there must be an affirmance of the judgment of the circuit court, and it is so ordered.